## CHARLES P. PRITCHARD *vs.* MARJORIE V. MABREY & another, individually and as trustees.

### Suffolk. March 3, 1970. — July 6, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ

*Snow and Ice. Negligence,* One owning or controlling real estate, Snow and ice. *Way,* Public: snow and ice. *Practice, Civil,* Verdict; Exceptions: what questions open.

Review of cases pertaining to the liability of the owner of land to a traveler on a public highway for injuries sustained by reason of maintenance on the land of a building from the roof of which snow or ice fell upon the traveler, or maintenance of a structure or other physical condition which collected water into a definite channel and poured it upon a public way, where the water froze and the traveler slipped and fell. [140–144]

Allegations in a declaration merely that water was so collected upon the defendants' premises as to discharge upon the public sidewalk and there freeze, "creating a nuisance in the nature of an icy sidewalk, slippery and dangerous," as a result of which the plaintiff was injured when he slipped thereon and fell, would not entitle the plaintiff to recover unless he proved that the condition alleged to be a nuisance was caused by wrongful conduct, either negligent or intentional, of the defendants. [144]

Evidence in an action that the defendants maintained a building on their land which, by reason of water dripping from bay windows overhanging a public sidewalk, created a dangerous area of ice upon the sidewalk warranted findings that they were negligent and liable to the plaintiff for injuries sustained when he slipped on the ice and fell while walking on the sidewalk. [144–145]

Where it appeared that evidence at the trial of an action of tort in which
the declaration set forth two counts warranted a finding for the plain-
tiff on count 2, that a motion by the defendants for directed verdicts
on both counts was denied at the close of the evidence, that the ver-
dict on count 2 was for the plaintiff and the verdict on count 1 was for
the defendants, that the defendants did not seek to set aside the ver-
dict on count 2 on the ground of inconsistency with the verdict on
count 1, and that their sole exception was to the denial of the motion
for directed verdicts, the question of inconsistency of the verdicts was
not open in this court and the exception was overruled. [145]

TORT. Writ in the Superior Court dated July 12, 1961.

The action was tried before *Smith*, J.

*John F. Dunn* for the defendants.

*Joseph F. McGaffigan* for the plaintiff.

QUIRICO, J. This is an action in tort to recover damages
for personal injuries sustained by the plaintiff when he fell
upon a patch of ice on the sidewalk of a public way in
front of the defendants' premises. The plaintiff's amended
declaration contained two counts. Count 1 is grounded on
the defendants' alleged negligence in causing an unnatural
accumulation of snow and ice to form on the sidewalk.
Count 2 is grounded on the defendants' alleged collecting of
water upon their premises and the discharging of it upon
the sidewalk where it froze and created a nuisance. The
case was tried to a jury who returned a verdict for the de-
fendants on count 1 and a verdict for the plaintiff in the
amount of $7,000 on count 2. The sole exception before us
is that taken by the defendants to the denial of their single
motion that the court "direct verdicts in their favor on all
counts of the plaintiff's declaration." The defendants did
not move before the trial court to set aside the verdict on
count 2. They now contend that since the jury found no
liability on count 1 for negligence, no liability can be found
on count 2 for nuisance.

The jury could find the following facts from the evidence.
In the early morning of December 17, 1960, the plaintiff was
walking up hill on Anderson Street on Beacon Hill in Boston
with one Miss Mona Smith, now the plaintiff's wife, toward
her apartment at 32 Anderson Street. At a point on the

public sidewalk in front of the defendants' property at 28 Anderson Street the plaintiff fell on some ice and broke his leg. After he fell and while he was still lying on the sidewalk waiting for assistance some water coming from bay windows of the defendants' building was dripping on him. Miss Smith went to his assistance and while she was kneeling near him she could feel water dripping on the back of her neck. It was coming from the bay windows directly above them. There were icicles around the edge of the bay windows on all its sides. The plaintiff was then lying on a thin patch of ice and two to three feet away from the building. He remained in that position until the police arrived and took him to a hospital. They also slipped on the ice and fell while removing the plaintiff. The next morning Miss Smith again saw the ice on which the plaintiff had fallen and also saw icicles hanging down from the bay windows. She had also seen icicles on the bay windows earlier in that winter.

The plaintiff seasonably notified the defendants of the time, place and cause of his injury as required by G. L. c. 84, §§ 18, 19 and 21, as amended.

The defendants' building at 28 Anderson Street is five stories high. At the second through fifth floors it has a three-sided bay window structure overhanging the public sidewalk by about three and one-half to four feet. The bottom of the bay windows is about fourteen feet above the sidewalk. At the top of the building there is a wide cornice which overhangs the sidewalk by about three and one-half feet beyond the exterior wall; and it follows the contour of the bay windows. The main roof slopes away from the street to a drain at the interior of the building. The sidewalk on Anderson Street is of concrete and is about five feet wide in front of the building.

There is nothing in the bill of exceptions or in the briefs of the parties on the circumstances under which the bay windows were built over the public sidewalk. Neither is there any reference to ordinances, regulations or permits governing or otherwise relating to the private use of such

space above a public way. See G. L. c. 40, § 23. *Cushing* v. *Boston*, 128 Mass. 330. If there is any such ordinance, regulation or permit issued pursuant thereto for these bay windows, in deciding this case we do not have the benefit of it.

It has long been recognized by the law of this Commonwealth that the owner of land abutting a public way has the duty to refrain from using his land or maintaining conditions or structures thereon in a manner which will interfere with the safety and convenience of travelers on the public way. It is not necessary for the purposes of this case to discuss or to attempt to decide all that is included within that duty. It is sufficient for our present purpose that included therein is the duty of the owner (a) not to maintain on his land "a building so near the street and so constructed that, in the ordinary course of things, snow or ice . . . [is] liable to fall from the roof upon travellers on the adjoining highway" (*Shepard* v. *Creamer*, 160 Mass. 496, 498), and (b) not to maintain on his land or on or above any part of the public way any structure or other physical condition which will "collect water into a definite channel by a spout or otherwise and pour it upon a public way" (*Field* v. *Gowdy*, 199 Mass. 568, 570). If the violation of that duty by the owner is the proximate cause of injuries to a traveler on the public way, the owner is held liable for such injuries. It will be sufficient to cite a few of the many cases in which this rule has been applied to permit recovery by an injured traveler. Many cases have held that owners of buildings with bay windows, cornices or other parts of the buildings projecting over public sidewalks were liable to travelers who were injured in falls on ice formed from water flowing or dripping of water from the projecting structure to the sidewalk. *Shipley* v. *Fifty Associates*, 101 Mass. 251; S. C. 106 Mass. 194. *Smethurst* v. *Barton Square Independent Congregational Church*, 148 Mass. 261. *Marston* v. *Phipps*, 209 Mass. 552. *Solomon* v. *Weissman*, 265 Mass. 423. *Bullard* v. *Mattoon*, 297 Mass. 182. *Tomasunas* v. *Khoury*, 314 Mass. 754. *Ferreira* v. *Gross*, 323 Mass. 175. *Laskowski* v. *Manning*, 325 Mass. 393.

It is quite clear that in all of the earlier cases applying this rule the claim for recovery was based on allegations of the defendants' negligence, and if recovery was allowed, it was allowed on proof of negligence causing the injury. In *Shipley* v. *Fifty Associates*, 106 Mass. 194, 199, the court said, "He has no right so to construct his building that it will inevitably, at certain seasons of the year, and with more or less frequency, subject his neighbor to . . . [the discharge of snow, ice or water which would not naturally fall on his land]; *and no other proof of negligence on his part is needed*" (emphasis supplied). In *Smethurst* v. *Barton Square Independent Congregational Church, supra,* the declaration alleged negligence by the defendant. The defendant argued that the injuries of the plaintiff were caused by the falling of snow from a portion of a building projecting over a public way and therefore "even if the defendant would be liable for a nuisance or in trespass, it is not liable in this action" for negligence. The court responded at 265: "Nor was such use the less properly described as careless and negligent because it was also distinctly wrongful." In *Shepard* v. *Creamer, supra,* the court said at 498: "If the ground of liability is negligence, as the defendant contends it is, then it was negligence to maintain a building so near the street and so constructed that, in the ordinary course of things, snow or ice was liable to fall from the roof upon travellers on the adjoining highway. . . . If the maintenance of the building as constructed was, as matter of law, negligence, the fact that the roof was constructed in the usual manner, and like that which had been used for many years on a large portion of the buildings on streets in Salem would not help the defendant." It is clear from this language that the negligence to which reference is made is the maintenance of a building which, as constructed, will cause the collection and discharge of snow, ice or water on a public way, and that it does not require proof that the collection and discharge were due to any defect, want of repair or deterioration in the building. *Bullard* v. *Mattoon*, 297 Mass. 182, 186–187.

Although the words "nuisance" or "public nuisance" were used in some of the earlier decisions on this subject, they were always used to describe conditions resulting from otherwise actionable wrongdoing, whether negligence or trespass. *Shipley* v. *Fifty Associates*, 101 Mass. 251, 254. *Leahan* v. *Cochran*, 178 Mass. 566, 568. *Marston* v. *Phipps*, *supra*, at 555. The words were not used as descriptive of conditions or circumstances giving rise to liability without further proof that the conditions or circumstances resulted from negligence or other tortious conduct. This relationship between negligence and liability seemed to be recognized in the 1937 decision of *Bullard* v. *Mattoon*, 297 Mass. 182, 187, where the court said: "In such a case an injured plaintiff in order to recover is not obliged to prove *specific negligence* in the construction or maintenance of the owner's building. The duty of the owner is, not to erect or maintain his building so that it creates a dangerous area of ice upon the street. If the character of his structure does create such a condition he is liable *without other proof of negligence*" (emphasis supplied). We do not read this as a holding that the plaintiff may recover without proof of negligence, but rather that if he proves that the owner maintained a building so constructed that it created a dangerous area of ice upon the street, that was proof of negligence. The plaintiff did not have to go further and prove that any want of repair, defect or deterioration in the building caused the dangerous condition.

The words "public nuisance" have been used with increasing frequency in connection with unlawful excavations in, or unlawful occupations or obstructions of public ways, and in such cases there is language to the effect that "negligence on the part of the defendant need not be shown to support the action so far as it is based on nuisance." *Jones* v. *Hayden*, 310 Mass. 90, 95. See *McKenna* v. *Andreassi*, 292 Mass. 213, 216. In time, cases of this type were cited as precedents in decisions involving the collection and discharge of water from private property to sidewalks with resulting injuries to pedestrians. Finally, in *Lamereaux* v.

*Tula,* 312 Mass. 359, 361–362, the court said: "If the plaintiff were suing in tort for negligence, we think that the defendants, in view of the condition of the ice in the trough and the ice from the trough to the sidewalk at the time of the accident, the generally below freezing temperature during the four days preceding the accident, and the permanent layout of their premises for the collection and discharge of water therefrom, knew or ought to have known of the presence of the ice in time to take steps prior to the accident to remove this danger from the way. But the plaintiff's action sounds in tort for the maintenance of a public nuisance. Where a landowner constructs structures or channels upon his land whereby water is artificially collected and discharged upon a sidewalk and thereby creates a dangerous area of ice upon the street, he is liable 'notwithstanding all the care that can be taken' to protect pedestrians. . . . *The plaintiff was not required to prove negligence upon the part of the defendants in order to prevail upon a count for nuisance"* (emphasis supplied). The *Shipley, Leahan* and *Bullard* cases of the one type, and the *McKenna* and *Jones* cases of the other type, are cited in support of the quoted language. The *Lamereaux* case was followed by the *Tomasunas* and *Ferreira* cases, *supra,* and by *Flannery* v. *State Mut. Life Assur. Co.* 339 Mass. 699, 701, all alleging nuisance as the basis for recovery for injuries sustained on public ways as the result of structures maintained by the defendants.

Seventeen years after the *Lamereaux* decision we were asked to apply its rule of liability for nuisance without proof of negligence to a case of injuries sustained on private property. We declined to do so. In commenting on the rule we cited the *Shipley, Leahan, Lamereaux, Bullard* and *Smethurst* cases and said: "The rule of liability in such cases is often described as resting on the creation of a public 'nuisance.' Despite language in our cases suggesting that such liability for creating a dangerous condition in a public way may arise apart from negligence, such statements may be too broad. . . . These cases we need not now review, beyond noting that the liability, even in such cases, may rest on negligence

in maintaining an artificial structure on private land which the owner should have foreseen would cause a dangerous condition on a public way. . . . The term 'nuisance' as a ground of liability usually results in confusion and frequently is a method of avoiding precision in analysis. . . . Accordingly, no liability can be found to exist on any theory of 'nuisance.' " *Delano* v. *Mother's Super Mkt. Inc.* 340 Mass. 293, 296–297. Some of that language was repeated in *Ted's Master Serv. Inc.* v. *Farina Bros. Co. Inc.* 343 Mass. 307, 311–312, with the following additional comment: "Liability in such an action, however it may be labelled or designated, should be based upon a determination that the interference [with the plaintiff's use and enjoyment of its land] is intentional and unreasonable or results from conduct which is negligent, reckless or ultrahazardous. . . . The term 'nuisance,' used by the plaintiffs, does not per se bespeak absolute liability and it does not relieve the plaintiffs of the burden of showing that the conduct of the defendant was tortious within the above-stated principles." In *Saldi* v. *Brighton Stock Yard Co.* 344 Mass. 89, 95–96, we said that "[t]he use of the word [nuisance] in tort cases based on the defendant's fault should be avoided."

Count 2 alleges that on December 17, 1960, water was so collected upon the defendants' premises as to discharge upon the public sidewalk and there freeze, "creating a nuisance in the nature of an icy sidewalk, slippery and dangerous," as the result of which the plaintiff was injured. We hold that a plaintiff is not entitled to recover on these allegations unless he proves by a fair preponderance of the evidence that the condition which he alleges to be a nuisance was caused by the wrongful conduct, either negligent or intentional, of the defendants. However, that does not require proof of any specific negligence. It is sufficient if the plaintiff proves that the defendants maintained a building which was so constructed that it caused snow, ice or water to be collected thereon and then discharged or caused or permitted it to fall, flow or drip to a public sidewalk, thereby creating a dangerous area upon the street which caused injury to the

plaintiff. If he proves that, it is sufficient proof of negligence causing the condition which count 2 calls a "nuisance," and "no other proof of negligence" is necessary. *Shipley* v. *Fifty Associates*, 106 Mass. 194, 199. *Bullard* v. *Mattoon*, 297 Mass. 182. In this case the evidence was sufficient to permit the jury to find that the defendants were negligent in maintaining the building which created the dangerous area of ice upon the public sidewalk where the plaintiff was injured. They were thus warranted in finding for the plaintiff on that count.

At this juncture it is inappropriate for us to second guess the judge in considering the defendants' motion for a directed verdict on count 1 for negligence. The motion was denied at the close of the evidence before the case was sent to the jury. At that time the evidence was sufficient to permit a finding for the plaintiff on count 2 as we have indicated. The record is devoid of information concerning the proceedings after the denial of the motion. In contrast to the situation in *Saldi* v. *Brighton Stock Yard Co.*, *supra*, we do not have before us the judge's instructions to the jury. Thus we have no way of ascertaining what the jury were told the plaintiff was required to prove to prevail on either of the two counts, nor whether there is any inconsistency in the two verdicts. And, unlike the *Delano* case, *supra*, which was heard by a judge without a jury, we do not have the benefit of any findings of facts and rulings of law such as were made by the judge in that case. In any event, the bill of exceptions shows no exception by the defendant to the recording of the verdicts, and no motion to set aside the verdict on count 2 as inconsistent with that on count 1. The proper time to make such objections or motions, or to take such exceptions was when the verdicts were returned and recorded. The question is not now open. *Low Supply Co.* v. *Pappacostopoulous*, 283 Mass. 633, 635. *Belkus* v. *Murdoch*, 315 Mass. 86, 88. *Phillips* v. *Larson*, 323 Mass. 87, 91. *Appleby* v. *Wallins*, 336 Mass. 35, 37.

*Exceptions overruled.*